IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE LOUIS D. BRANDEIS CENTER FOR HUMAN RIGHTS UNDER LAW and JEWISH AMERICANS FOR FAIRNESS IN EDUCATION,<br><br>Plaintiffs,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Defendant. | Case No. 1:24-cv-11354-RGS<br><br>Leave to file granted September 4, 2024 |

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1
ARGUMENT........................................................................................................................2
I. Plaintiffs Fail To Plead Direct Discrimination .....................................................2
II. Plaintiffs Fail to Plead Deliberate Indifference ...................................................5
III. Plaintiffs Fail To Plead Retaliation......................................................................9
IV. Plaintiffs Lack Standing.......................................................................................9
CONCLUSION....................................................................................................................10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bose v. Bea*,
  947 F.3d 983 (6th Cir. 2020) ...............................................................................................9

*Board of County Commissioners v. Brown*,
  520 U.S. 397 (1997) ..............................................................................................................5

*Brown v. Hot, Sexy & Safer Productions, Inc.*,
  68 F.3d 525 (1st Cir. 1995) ...................................................................................................7

*Czerwienski v. Harvard University*,
  666 F. Supp. 3d 49 (D. Mass. 2023) .....................................................................................9

*Davis Next Friend LaShonda D. v. Monroe County Board of Education.*,
  526 U.S. 629 (1999) ............................................................................................................10

*Doe v. Brown University*,
  43 F.4th 195 (1st Cir. 2022) ............................................................................................2, 3

*Doe v. Pawtucket School Department*,
  969 F.3d 1 (1st Cir. 2020) ..................................................................................................10

*Doe v. Purdue University*,
  928 F.3d 652 (7th Cir. 2019), ..............................................................................................5

*Doe v. Stonehill College, Inc.*,
  55 F.4th 302 (1st Cir. 2022) .................................................................................................3

*Fitzgerald v. Barnstable School Committee*,
  504 F.3d 165 (1st Cir. 2007), ...........................................................................................5, 9

*Green v. Sirchie Acquisition Co. LLC*,
  633 F. Supp. 3d 393 (D. Mass. 2022) ................................................................................10

*I.F. v. Lewisville Independent School District*,
  915 F.3d 360 (5th Cir. 2019) ...............................................................................................3

*Jones v. Baystate Health, Inc.*,
  2022 WL 21778544 (D. Mass. Nov. 4, 2022) ......................................................................5

*Kestenbaum v. President and Fellows of Harvard College*,
  2024 WL 3658793 (D. Mass. Aug. 6, 2024) ............................................................... *passim*

*National Foreign Trade Council v. Natsios*,
    181 F.3d 38 (1st Cir. 1999)...................................................................................................10

*New Hampshire Motor Transp. Ass'n v. Rowe*,
    448 F.3d 66 (1st Cir. 2006)...................................................................................................10

*Roe v. Healey*,
    78 F.4th 11 (1st Cir. 2023)...................................................................................................10

*StandWithUs Center for Legal Justice v. MIT*,
    2024 WL 3596916 (D. Mass. July 30, 2024).................................................................1, 5, 6, 7

*Sverdlov v. Eydinov*,
    555 F. Supp. 3d 1 (D. Mass. 2021) .......................................................................................8

*Thompson v. Ohio State University*,
    990 F. Supp. 2d 801 (S.D. Ohio 2014) .................................................................................5

# INTRODUCTION

In *Kestenbaum v. President and Fellows of Harvard College*, this Court allowed a Title VI suit to proceed only after holding that the plaintiffs in that case plausibly alleged that Harvard "fail[ed] to address" or "did not respond at all" to specific "antisemitic incidents" described in their complaint. 2024 WL 3658793, at *6 (D. Mass. Aug. 6, 2024). Plaintiffs' Complaint in this separate action contains no such allegations. Plaintiffs instead chose to bring claims predicated on a few specific alleged incidents in which their members raised concerns about antisemitism and Harvard responded by deploying significant resources to investigate and resolve those concerns. Plaintiffs' Complaint therefore closely resembles the pleading this Court dismissed with prejudice in *StandWithUs Center for Legal Justice v. MIT*, 2024 WL 3596916, at *5 (D. Mass. July 30, 2024). Plaintiffs cannot survive a motion to dismiss by borrowing allegations made by different parties in a different lawsuit, which are unproven and hotly contested. Plaintiffs' own allegations—and the implausible inferences of discriminatory animus, deliberate indifference, and retaliation Plaintiffs seek to draw from them—fail to state a Title VI claim.

*First*, Plaintiffs do not plausibly allege direct discrimination by Harvard. Conceding they have not alleged that Harvard has treated comparable incidents differently, Plaintiffs resort to rank speculation about the motives behind Harvard's approach to investigating two complaints. Their threadbare accusations of discriminatory animus are insufficient to plead intent.

*Second*, Plaintiffs do not plead deliberate indifference. The reasonableness of Harvard's responses is evident from the face of their own Complaint, and they cannot cure this pleading defect by borrowing allegations from a different lawsuit. Nor does this Court's recent decision in *Kestenbaum* resolve Plaintiffs' deliberate indifference claim. *Kestenbaum* only underscores what Plaintiffs' Complaint lacks: plausible allegations that Harvard's reaction to events described in the Complaint was not "reasonable and proportionate." 2024 WL 3658793, at *6-7.

1

*Third*, Plaintiffs cannot state a retaliation claim. Plaintiffs' retaliation claim is predicated solely on the conduct of a Harvard professor that, as Plaintiffs do not dispute, cannot be imputed to Harvard. Plaintiffs claim Harvard disregarded the professor's conduct when Harvard learned of it, but the Complaint conclusively shows the opposite: that Harvard immediately investigated and informed Plaintiffs it had taken personnel action that Plaintiffs have no basis to discredit.

*Finally*, Plaintiffs lack standing. Plaintiffs tell the Court their members suffer ongoing or certainly impending injury, but their allegations do not show it. Plaintiffs also lack standing to sue on their members' behalf. In their effort to benefit from *Kestenbaum*'s allegations, Plaintiffs neglect to explain how the claims *they* bring can proceed without members' individual participation, or how the relief *they* seek would benefit their members as a whole.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLEAD DIRECT DISCRIMINATION

Plaintiffs' direct discrimination claim must be dismissed because nowhere in their Complaint do they plausibly allege that Harvard "acted with discriminatory intent" or a "racial motive." *Doe v. Brown Univ.*, 43 F.4th 195, 208-209 (1st Cir. 2022). Plaintiffs concede (Opp. 18-19) that they offer the Court no "comparator evidence" from which it could infer that Harvard treats similarly situated students differently based on shared ancestry. Instead, their discrimination claim boils down to dissatisfaction with how Harvard publicly communicated about two incidents described in the Complaint. These allegations do not support Plaintiffs' groundless accusations of a "cover-up[]," "arbitrary application of policies," or "caving in" to antisemitic views (Opp. 16-19), let alone plausibly suggest discriminatory animus.

Take Plaintiffs' baseless assertion (Opp. 16-17) that Harvard "invented a bogus excuse to protect the offender and ensure he would evade punishment" by announcing it would address Member 4's alleged assault through its student disciplinary process once the already-announced

2

law enforcement inquiry into the same events was complete.  Compl. ¶ 148.  Plaintiffs argue (Opp. 16) this decision was "non-sensical" because it treated the accused assailants more favorably than "non-criminal offenders" whom the school purportedly "punishes … all the time."  They similarly suggest (Opp. 19) that Harvard's decision was "arbitrary," "inexplicable," or "perplexing."  But even if there were a difference in treatment—something the Complaint does not plead—this Court has explained that "[t]he mere existence of disparate treatment … does not furnish [an] adequate basis for an inference that the discrimination was racially motivated."  *Kestenbaum*, 2024 WL 3658793, at *7 (quotation marks omitted).

Plaintiffs refer to a single occasion in which Harvard purportedly punished an assailant after a criminal charge—an incident they concede is not comparable (Opp.18), and which, according to their own source, involved a student on leave who came to campus with a baseball bat and beat up another student, all after multiple incidents of violent behavior.  They offer no basis to infer that Harvard's decision here differed from that past response in ways "attributable to [shared ancestry] rather than to some other reason."  *Doe v. Stonehill College, Inc.*, 55 F.4th 302, 334 (1st Cir. 2022).  Even if Plaintiffs had pleaded disparate treatment, the parallel criminal inquiry here provides an obvious race-neutral motive for Harvard's decision not to proceed with its own disciplinary process immediately; like a student "already found responsible for … misconduct," a student under criminal investigation may "receive greater scrutiny" than others, making it "rational for an administrator" to treat him differently.  *Brown Univ.*, 43 F.4th at 207-208; *see I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 374-376 (5th Cir. 2019) (rejecting Title IX claim where school began investigation only after law enforcement clearance).

Plaintiffs' arguments that Harvard undertook an "intentional scheme to protect" Member 4's accused assailants and "keep the victim quiet" (Opp. 16-17) are also unmoored to the

3

allegations in the Complaint. The Complaint demonstrates that Harvard launched an external investigation into the alleged assault even before the accused assailants were criminally charged. Compl. ¶¶ 151-156, 159-160. Member 4 and his attorneys were contacted to participate in this investigation as early as January 2024. *Id.* ¶¶ 151-152. The allegation that the investigation has not yet resulted in discipline—an outcome that typically would not be made public—cannot establish discriminatory animus, especially where Plaintiffs "do not identify reasonably comparable analogs" suggesting that Harvard acts differently when the victim is not Jewish. *Kestenbaum*, 2024 WL 3658793, at *7. Plaintiffs also offer no support for their unpleaded assertion that Harvard's handling of this incident has been influenced by allegedly discriminatory views among its faculty (Opp. 19-20 & n.4); their own allegations claim that Harvard has pursued its inquiry despite a faculty group's opposition. Compl. ¶¶ 151-152.

Plaintiffs' attempt to twist Harvard's response to allegations of bias by Professor Ganz into a discriminatory "cover-up[]" (Opp. 16-17) is similarly refuted by their own Complaint and the exhibits they chose to attach to it. Those documents show that Harvard did not "obfuscate" or "mislead" Plaintiffs (Opp. 17-18). After accepting many findings of the independent investigation it commissioned into Plaintiffs' allegations, Harvard committed to taking action "to ensure … that the violations of policies that occurred this spring are addressed fully and do not recur." Compl. Ex. D; *see* Compl. ¶¶ 75-76. Harvard advised the students at the outset that it "may not be able to give [them] full information about the steps taken because some measures, such as personnel actions, may be confidential in nature." Compl. Ex. D. Harvard then directly apologized to the students and explained that it was "taking several steps" to "prevent any recurrence of violations," including "certain personnel actions" that were "confidential in nature" but "directed to preventing the repetition" of the conduct at issue. Compl. Ex. F.

4

Plaintiffs argue (Opp. 19) this Court should infer bias from "the circumstances surrounding the alleged discriminatory action," but the cases they cite only underscore that Plaintiffs' allegations cannot support an inference of discriminatory motive here. Plaintiffs principally focus on *Thompson v. Ohio State University*, but in that case a student alleged (based on specifically-pleaded comparator evidence) that a university punished its student based on accusations of plagiarism lodged by a professor who had only ever reported students of color. 990 F. Supp. 2d 801, 806-807 (S.D. Ohio 2014). That university's "active participation" in imposing a discriminatory penalty, *id.* at 816-817, looks nothing like Harvard's efforts to investigate alleged perpetrators of antisemitic conduct. Plaintiffs' remaining cases are just as far afield, involving, for example, a university's biased investigatory procedures that favored women over men, *Doe v. Purdue Univ.*, 928 F.3d 652, 669-670 (7th Cir. 2019), and a hospital's denial of care accompanied by statements invoking "racial stereotype[s]," *Jones v. Baystate Health, Inc.*, 2022 WL 21778544, at *6 (D. Mass. Nov. 4, 2022). In contrast to those cases, Plaintiffs' allegations demonstrate that Harvard has done, and is doing, precisely what Plaintiffs ask this Court to order it to do: respond appropriately to complaints of antisemitism.

## II. PLAINTIFFS FAIL TO PLEAD DELIBERATE INDIFFERENCE

Plaintiffs' deliberate indifference claim must be dismissed because Plaintiffs fail to "allege facts showing that [Harvard's] response to the incidents" described in their Complaint "was 'so lax, so misdirected, or so poorly executed as to be clearly unreasonable under the known circumstances.'" *StandWithUs*, 2024 WL 3596916, at *4 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 175 (1st Cir. 2007), *rev'd on other grounds*, 555 U.S. 246 (2009)). This Court's recent decisions reaffirm that "[d]eliberate indifference is a 'stringent standard of fault.'" *Id.* (quoting *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). It "means affirmatively choosing to do the wrong thing, or doing nothing, despite knowing what

5

the law requires." *Id.*  This Court thus held in *StandWithUs* that allegations that MIT was "too measured" in its "evolving" efforts to "contain … escalating on-campus protests" failed to plead deliberate indifference.  *Id.* at *5.  In *Kestenbaum*, by contrast, this Court concluded that "*as pled*, Harvard's reaction" to specific incidents described in that complaint failed to satisfy "Title VI's commands."  2024 WL 3658793, at *6-7 (emphasis added).

Plaintiffs' allegations do not plead deliberate indifference under the standard articulated by this Court in *StandWithUs* and *Kestenbaum*.  Nearly all of Plaintiffs' factual allegations pertain to two incidents: the alleged discrimination against Members 1-3 by Professor Ganz in a Spring 2023 class and the alleged assault on Member 4 at an October 18, 2023, protest.  Compl. ¶¶ 37-80, 111-132, 139-161.  The Complaint and its exhibits demonstrate that Harvard responded promptly to both by launching investigations.  *Id.* ¶¶ 65-66, 148, 151-156; Compl. Ex. D.  And after Members 1-3 raised concerns about bias, Harvard apologized and informed Plaintiffs that it had taken confidential personnel actions "directed to preventing the repetition of such conduct."  Compl. Ex. F.

Plaintiffs' suggestion (Opp. 13) that their Complaint contains some conspicuous list of damning allegations that "Harvard fail[s] to acknowledge" is false.  As Harvard explained in its motion, the Complaint's remaining allegations do not identify any incident that Harvard knew of but responded to in a manner that was "clearly unreasonable under the known circumstances." *StandWithUs*, 2024 WL 3596916, at *4.  Nor do Plaintiffs' allegations plausibly demonstrate that Harvard was made aware of a hostile environment but "affirmatively cho[se] to do the wrong thing, or [did] nothing" in response.  *Id.* at *4.  Instead, Plaintiffs describe anonymous social media messages received by unnamed students at unspecified times.  *Id.* ¶¶ 93-101.  They assert that Member 5 observed offensive social media posts and antisemitic slogans at some number of

6

campus protests, *id.* ¶¶ 134-137, and that she emailed unnamed "Harvard administrators" on unspecified occasions but decided against filing a formal complaint, *id.* ¶ 162. And they cite a social media post that Harvard condemned, *id.* ¶ 102; a planned event that was later canceled, *id.* ¶¶ 103-105; and a student-body resolution critical of Israel, *id.* ¶¶ 106-107. That covers *all* of the incidents alleged in the Complaint. Nowhere do Plaintiffs explain how Harvard's response to those incidents was "lax" or "poorly executed." *Kestenbaum*, 2024 WL 3658793, at *7.

Unable to explain how their own allegations plead deliberate indifference, Plaintiffs argue that they do not have to (Opp. 13-15). They are wrong. To start, Plaintiffs cannot simply insist (Opp. 13) that *Kestenbaum* relieves them of their burden to state a claim because all "Jewish students on the same campus necessarily experience the same 'environment.'" Plaintiffs do not allege, nor could they, that all Jewish students at Harvard experience the same alleged harassment, witness the same incidents, or have the same fears (Opp. 13). Plaintiffs who complain about a hostile environment must establish an "objectively hostile environment" *and* that they "subjectively perceive[d] the environment to be abusive." *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 540-541 (1st Cir. 1995). Nor can Plaintiffs rely on their contorted reading of Harvard's motion to consolidate, which aimed to conserve judicial resources and eliminate duplicative discovery because the two cases "assert similar claims based on many of the same factual allegations against the same defendant." *Kestenbaum*, 1:24-cv-10092-RGS (June 11, 2024), Dkt. 68 at 2. Notably, Harvard explained that "many of the allegations in *Brandeis Center* are asserted as bases for Title VI liability in *Kestenbaum*"—not the other way around. *Id.* at 3. Even a cursory glance at the *Kestenbaum* complaint makes clear its (unproven) allegations are far more expansive than Plaintiffs'—even though Plaintiffs brought this case only after multiple complaints were filed and a motion to dismiss fully briefed in *Kestenbaum*.

7

Even if this Court could credit Plaintiffs' unpleaded assertion that they experienced other incidents of antisemitic harassment alluded to nowhere in the Complaint, Plaintiffs are simply wrong to claim that they can ride the coattails of *Kestenbaum*'s deliberate indifference decision on the motion to dismiss. This Court did not hold in *Kestenbaum* that Harvard was deliberately indifferent "writ large" or that *Kestenbaum*'s deliberate-indifference holding "applies equally to Plaintiffs' members" (Opp. 15). This Court concluded in *Kestenbaum* that the allegations in that case, "*as pled*" in that case, were sufficient to state a deliberate indifference claim under the 12(b)(6) standard. 2024 WL 3658793, at *6 (emphasis added). None of the alleged incidents cited by the Court in *Kestenbaum* as suggestive of deliberate indifference there—administrators not stopping demonstrations in a law school lounge, campus police not reacting to an altercation within the encampment, and disruptive conduct by a suspended student group—can be found in Plaintiffs' Complaint. *See id.* Certainly, Plaintiffs nowhere plausibly allege that Harvard learned of harassment but "did not respond at all." *Id.* Plaintiffs' deliberate indifference claim cannot proceed because it merely "relies on allegations—not facts—from an unverified complaint in another case." *See Sverdlov v. Eydinov*, 555 F. Supp. 3d 1, 3 (D. Mass. 2021).

Finally, Plaintiffs' claim that Harvard "did nothing to remedy" the alleged conduct of Professor Ganz (Opp. 15) is flatly contradicted by their own pleading. Harvard launched an independent investigation, Compl. ¶ 66; accepted many of its findings, *id.* ¶ 75; and committed to taking action to "ensure … that the violations of policies that occurred … are addressed fully and do not recur," Compl. Ex. D. And Harvard followed through on that commitment by, among other steps, taking "personnel actions responsive to the conduct at issue." Compl. Ex. F. Plaintiffs' response to these facts—plainly set forth in their own pleading—is to assert falsely and baselessly that Harvard lied to them and "did not actually take action" to address their

8

complaint (Opp. 15). Title VI "does not require educational institutions to … adopt strategies advocated by [Plaintiffs]." *Fitzgerald*, 504 F.3d at 174. Their assertion that Harvard did not deliver their preferred vision of accountability fails to state a deliberate indifference claim.

### III.  PLAINTIFFS FAIL TO PLEAD RETALIATION

Plaintiffs' retaliation claim also must be dismissed. Plaintiffs do not dispute that Harvard cannot be held "strictly liable" for alleged retaliation by Professor Ganz. *Czerwienski v. Harvard Univ.*, 666 F. Supp. 3d 49, 92 (D. Mass. 2023); *see Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020). Nor do they even claim that Harvard engaged in its own retaliatory conduct. They instead argue (Opp. 20) that Harvard knew of but failed to address Professor Ganz's alleged "discriminatory or retaliatory actions" against Members 1-3, citing two deliberate indifference cases. But as just explained, Plaintiffs' own pleadings refute their claim that Harvard was deliberately indifferent to alleged retaliation by Professor Ganz. *Supra* Part II. Despite Plaintiffs' contrary suggestion (Opp. 20), they do not allege that Members 1-3 complained to Harvard of discrimination before the Brandeis Center raised concerns about Professor Ganz in a March 29, 2023, letter; before that date, Plaintiffs had only discussed their concerns with Professor Ganz and his teaching assistant. *See* Compl. ¶¶ 41-65. Nor do Plaintiffs plausibly allege that Harvard "failed to address" the allegations in that letter—as noted, once Harvard learned of these claims, it immediately investigated them and subsequently took action to prevent their recurrence, as the Complaint and its exhibits confirm. Compl. ¶¶ 75-79; Compl. Exs. D, F. Plaintiffs' assertions that *Professor Ganz* retaliated against them cannot state a claim against *Harvard*, which Plaintiffs admit took swift steps to remedy their complaints.

### IV.  PLAINTIFFS LACK STANDING

While pleading failures alone warrant dismissal, Plaintiffs' lack of standing is also a basis to dismiss the case in its entirety. Since Plaintiffs seek only prospective relief, they "must allege

9

an 'ongoing injury or a sufficient threat that the injury will recur.'" *Kestenbaum*, 2024 WL 3658793, at *3 (quoting *Roe v. Healey*, 78 F.4th 11, 21 (1st Cir. 2023)). Plaintiffs do not do so—the conduct of Professor Ganz has been investigated and addressed, Member 4's alleged assault is being investigated, and none of the allegations describing isolated campus events or offensive statements made at unspecified times plausibly states an ongoing or certainly impending harm. Plaintiffs' "one example" of a purportedly ongoing harm is that certain students feel "they are not welcome" because Harvard's investigation into Member 4's alleged assault has not resulted in "public and final remedial action" (Opp. 8-9). Absent "an actual harm from which their alleged emotional injuries stem, those emotional injuries cannot support standing." *Green v. Sirchie Acquisition Co. LLC*, 633 F. Supp. 3d 393, 400 (D. Mass. 2022).

Nor do Plaintiffs have representational standing. The First Circuit has rejected Plaintiffs' suggestion that associations always have standing to seek injunctive relief for their members. *New Hampshire Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006), *aff'd*, 552 U.S. 364 (2008). Plaintiffs' claims are necessarily individualized: they claim discrimination in the process by which Harvard handled one member's alleged assault, retaliation against three students in connection with a single course, and deliberate indifference to those incidents. Plaintiffs also appear to seek an injunction requiring that Harvard discipline individual students and professors—relief that *Davis* forecloses and that looks nothing like "uniform, campus-wide relief that would benefit all members" (Opp. 12). Plaintiffs' conclusory claim of "limit[ed] … bandwidth" fails to plead organizational injury (Opp. 7 n.1), and they waived this argument by raising it only in a footnote. *National Foreign Trade Council v. Natsios*, 181 F.3d 38, 60 n.17 (1st Cir. 1999), *aff'd sub nom. Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000).

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint with prejudice.

10

DATED:  September 10, 2024

        Respectfully Submitted,

        PRESIDENT AND FELLOWS OF HARVARD COLLEGE

        By its attorneys,

        */s/ Felicia H. Ellsworth*

| | |
|---|---|
| Mark A. Kirsch (*pro hac vice*) | Felicia H. Ellsworth, BBO #665232 |
| KING & SPALDING LLP | WILMER CUTLER PICKERING |
| 1185 Avenue of the Americas |   HALE AND DORR LLP |
| 34th Floor | 60 State Street |
| New York, NY 10036 | Boston, MA 02109 |
| mkirsch@kslaw.com | Tel:  (617) 526-6000 |
| Tel: (212) 790-5329 | Fax: (617) 526-5000 |
| Fax: (212) 556-2222 | felicia.ellsworth@wilmerhale.com |

        Seth P. Waxman (*pro hac vice*)
        Bruce M. Berman (*pro hac vice*)
        Jeremy W. Brinster (*pro hac vice*)
        WILMER CUTLER PICKERING
          HALE AND DORR LLP
        2100 Pennsylvania Avenue NW
        Washington, DC 20037
        Tel:  (202) 663-6000
        Fax: (202) 663-6363
        seth.waxman@wilmerhale.com
        bruce.berman@wilmerhale.com
        jeremy.brinster@wilmerhale.com

## CERTIFICATE OF SERVICE

      I hereby certify that on September 10, 2024, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                */s/ Felicia H. Ellsworth*
                                                Felicia H. Ellsworth